ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| THE MICHAELS DEVELOPMENT COMPANY I, L.P.<br><br>    Peticionaria<br><br>    v.<br><br>DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; ADMINISTRACIÓN DE VIVIENDA PÚBLICA DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>    Recurrida | **TA2026CE00286** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm.: SJ2025CV10536<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico a 14 de abril de 2026.

Comparece ante nos The Michaels Development Company I, L.P. (TMDC o "parte peticionaria") y nos solicita que revisemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 18 de febrero de 2026. Mediante el referido dictamen, el foro primario dejó sin efecto la anotación de rebeldía contra el Departamento de la Vivienda de Puerto Rico; la Administración de Vivienda Pública de Puerto Rico; y el Estado Libre Asociado de Puerto Rico (en conjunto, "parte recurrida").

Por los fundamentos que expondremos a continuación, **DENEGAMOS** el recurso de *certiorari* presentado.

# I.

El 17 de noviembre de 2025, TMDC presentó una *Demanda* sobre cobro de dinero en contra de la parte recurrida, junto con los proyectos de emplazamientos.[1] En esencia, alegó que el 4 de febrero de 2022, las partes de epígrafe firmaron un "*Master Development Agreement*" (Acuerdo) para el proyecto de Los Alamos, en Guaynabo, PR. No obstante, sostuvo que el 3 de marzo de 2025, avisó a la parte recurrida sobre múltiples contingencias del desarrollo, y que si no se corregían daría por terminado el Acuerdo. Señaló que, el 17 de junio de 2025, la Administración de Vivienda Pública notificó un "Aviso de Terminación", en el que informó que habían decidido cancelar el proyecto y terminar el Acuerdo. Asimismo, que entre los requisitos se encontraba que debían someter no más tarde del 5 de julio de 2025, todas las facturas impagadas. La parte peticionaria, luego de una solicitud de prórroga, sometió el contenido de las facturas pendientes y evidencia de las cantidades reclamadas, por la suma de $5,581,367.15. Sin embargo, resaltó que la parte recurrida no se contactó, ni respondió a la reclamación extrajudicial enviada.

El 23 de diciembre de 2025, presentó una *Moción Sometiendo Emplazamientos Diligenciados*, en la que informó que desde el 9 de diciembre de 2025, habían notificado a la parte recurrida sobre la demanda y emplazamiento.[2]

El 6 de febrero de 2026, la parte recurrida presentó una *Moción Solicitado Fianza de No Residente al Amparo*

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). El 23 de febrero de 2026, TMDC presentó la *Demanda* en español, según *Orden* emitida por el Tribunal.
[2] *Moción Sometiendo Emplazamientos Diligenciados*, entrada núm. 6 en SUMAC.

*de la Regla 69.5 de Procedimiento Civil.*[3] Alegó que, la parte peticionaria era una corporación extranjera cuyo domicilio se encontraba en el estado de New Jersey, Estados Unidos. Por ello, solicitó se ordenara la prestación de la fianza de no residente a TMDC, y suspendiera la litigación del pelito hasta que no fuera prestada la fianza.

El 10 de febrero de 2026, el foro primario notificó una *Orden*, en la cual ordenó el pago de la fianza por la cantidad de $5,000.00, y suspendió los procedimientos a tenor con los términos de la Regla 69.5 de Procedimiento Civil.[4]

El 11 de febrero de 2026, TMDC presentó una *Moción Informando Prestación de Fianza de Demandante No Residente.*[5] Expresó que había prestado la fianza requerida, por lo que, solicitó se dejara sin efecto la suspensión de los procedimientos.

Así las cosas, el 12 de febrero de 2026, el foro recurrido notificó una *Orden*, en la que dio por cumplida la orden y autorizó la continuación de los procedimientos.[6]

El 16 de febrero de 2026, TMDC presentó una *Moción Solicitando Anotación de Rebeldía.*[7] Mediante la cual, planteó lo siguiente:

> […] el plazo para que los [recurridos] presentaran su contestación a la demanda venció el 9 de febrero de 2026, ya que la orden suspendiendo los procedimientos, aunque se dictó el 9 de febrero de 2026, se notificó el 10 de febrero de 2026, por lo que las partes no tenían conocimiento de la

---

[3] *Moción Solicitado Fianza de No Residente al Amparo de la Regla 69.5 de Procedimiento Civil*, entrada núm. 8 en SUMAC.
[4] *Orden*, entrada núm. 12 en SUMAC.
[5] *Moción Informando Prestación de Fianza de Demandante No Residente*, entrada núm. 14 en SUMAC.
[6] *Orden*, entrada núm. 15 en SUMAC.
[7] *Moción Solicitando Anotación de Rebeldía*, entrada núm. 16 en SUMAC.

suspensión y debían haber actuado como si la suspensión no se hubiese decretado. No obstante, aun asumiendo que el plazo improrrogable de 60 días para que los [recurridos] contestaran la demanda quedó suspendido el 9 de febrero de 2026, último día del plazo, entonces, el plazo se reanudó el 12 de febrero de 2026, cuando el Honorable Tribunal emitió y notificó la orden dejando sin efecto la suspensión de los procedimientos (si no es que ocurrió antes, el 11 de febrero de 2026, cuando TMDC prestó la fianza de demandante no residente requerida).[8] Es decir, dando a los [recurridos] el beneficio de lo anterior, el plazo improrrogable de 60 días para que éstos contestaran la demanda venció el 12 de febrero de 2026, sin que los [recurridos] hubiesen hecho lo propio.

Por lo tanto, resaltó que debido a que el plazo de 60 días que tenían los recurridos para contestar la demanda es improrrogable, el mismo era jurisdiccional y el foro primario no tenía jurisdicción para extenderlo ni para entender en lo que puedan plantear los recurridos a destiempo en una contestación a la demanda tardía. Consecuentemente, solicitó se le anotara la rebeldía y se dieran por admitidas las aseveraciones de las alegaciones.

El 17 de febrero de 2026, los recurridos presentaron su *Oposición a "Moción Solicitando Anotación de Rebeldía"*.[9] En esta, alegaron que el término para contestar la demanda no había transcurrido, por ende, la solicitud de anotación de rebeldía carecía de fundamentos o era prematura. Arguyeron que, toda vez que el foro primario ordenó la continuación de los procedimientos el 12 de febrero de 2026, el término debía

---

[8] La Regla 69.5 dispone, en parte pertinente, que "[t]odo procedimiento en el pleito se suspenderá hasta que se preste la fianza […]." 32 LPRA Ap. V, R. 69.5. "Por tanto, podría entenderse que no es necesario que el Honorable Tribunal emita una orden reanudando los procedimientos para que la suspensión quede sin efecto, sino que basta con que se haya prestado la fianza requerida para que la suspensión termine automáticamente." (Cita en el original).

[9] *Oposición a "Moción Solicitando Anotación de Rebeldía"*, entrada núm. 17 en SUMAC.

computarse a partir de dicha fecha. A su vez, insistieron en que al ser un caso de cobro de dinero contra el Estado, no procedía dictar sentencia en rebeldía sin que la parte peticionaria probara la reclamación conforme a la Regla 45.5 de Procedimiento Civil. Finalmente, que existían fundamentos para dejar sin efecto una anotación de rebeldía por "causa justificada". Alegaron que, no han sido temerarios, ni demostraron algún perjuicio a la parte peticionaria. Por ello, solicitaron fuera denegada la solicitud de anotación de rebeldía.

El 17 de febrero de 2026, siendo notificada el 18 de febrero de 2026, el foro primario emitió una *Orden,* en la que determinó anotarle la rebeldía a la parte recurrida.[10]

No obstante, en la misma fecha, el foro *a quo* notificó la *Orden* recurrida, mediante la cual dejó sin efecto la anotación de rebeldía y les concedió 20 días a los recurridos para presentar su alegación responsiva.[11]

En desacuerdo, el 19 de febrero de 2026, TMDC presentó una *Moción de Reconsideración de Orden Dejando Sin Efecto la Anotación de Rebeldía*.[12] En síntesis, sostuvo que los recurridos no presentaron moción alguna que interrumpiera el término para contestar la demanda. Asimismo, esbozó que la Regla 45.5 de Procedimiento Civil, no impedía la anotación de rebeldía contra el Estado, sino únicamente limita la concesión automática de sentencia. De otra parte, mencionó que los recurridos

---

[10] *Orden*, entrada núm. 18 en SUMAC.
[11] *Orden*, entrada núm. 19 en SUMAC.
[12] *Moción de Reconsideración de Orden Dejando Sin Efecto la Anotación de Rebeldía*, entrada núm. 20 en SUMAC.

no tenían una buena defensa con especificidad ni evidencia, por lo que, no establecieron justa causa para dejar sin efecto la rebeldía. Así pues, solicitó que el foro a quo reconsiderara su decisión y reinstalara la anotación de rebeldía de los recurridos.

En la misma fecha, el foro recurrido notificó una *Orden*, en la cual declaró *No Ha Lugar* a la reconsideración.[13]

Aun inconforme, el 9 de marzo de 2026, la parte peticionaria presentó el recurso de epígrafe en el que planteó los siguientes señalamientos de error:

> **Primer Error**: Erró el TPI al levantar la anotación de rebeldía a los Recurridos sin los Recurridos haber demostrado causa justificada para ello.

> **Segundo Error**: Erró el TPI al conceder a los Recurridos una prórroga de 20 días para contestar la demanda a pesar de la Regla 10.1 disponer que el plazo de 60 que tenían los Recurridos para contestar la demanda es "improrrogable."

> **Tercer Error**: Erró el TPI al denegar la Reconsideración.

El 9 de marzo de 2026, emitimos una *Resolución* concediéndole a la parte recurrida el término de 15 días para que se expresara sobre los méritos del recurso.

El 24 de marzo de 2026, la parte recurrida presentó su *Escrito en Cumplimiento de Resolución*.

Contando con la comparecencia de las partes, procedemos a atender el recurso de epígrafe. Veamos.

## II.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207

---

[13] *Orden*, entrada núm. 21 en SUMAC.

(2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos." *Íd*. Ahora bien, el ejercicio de esta discreción no es absoluto.

Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, delimita los criterios para la expedición de un auto de *certiorari*. Por ello, dichos criterios "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional." *Rivera et al v. Arcos Dorados et al*, supra. La aludida regla permite que el análisis del

foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos Dorados et al,* supra; *Torres González v Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40 de nuestro Reglamento, *supra*, dispone los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto." *Citibank v. ACBI,* 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la

facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción." *Íd*. pág. 735; *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad." *Íd.*; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Íd*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. *Íd*. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**−B−**

La Regla 10.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.1, dispone los términos que tiene una parte demandada para contestar una reclamación en su contra. Así pues, en reclamaciones contra el Estado el referido estatuto dispone específicamente lo sigue:

> […] Cuando el Estado Libre Asociado de Puerto Rico y los municipios, sus funcionarios(as) o una de sus instrumentalidades, excluyendo a las corporaciones públicas, sean parte de un pleito, cualquier parte notificará su contestación a la demanda, su contestación a una demanda contra coparte en su contra o su réplica a una reconvención, dentro del término improrrogable de sesenta (60) días

de habérsele entregado copia del emplazamiento y la demanda. […].

Por otro lado, se ha establecido que para poder determinar que un plazo es jurisdiccional, el legislador debe establecer claramente que su intención fue imponerle esa naturaleza. *Rosario Domínguez et als. v. ELA et al.*, 198 DPR 197, 209 (2017). En vista de esto, cuando la ley no contiene una expresión a tales efectos, el término deberá entenderse como directivo. *Benítez Nieves v. ELA et al.,* 202 DPR 818, 828 (2019).

El mecanismo de la anotación de la rebeldía se encuentra constituido en nuestro derecho procesal civil en la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1, el cual dispone lo siguiente:

> Cuando una parte contra la cual se solicite una sentencia para conceder un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o la Secretaria anotará su rebeldía.
>
> El tribunal, a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).
>
> Esta anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).
>
> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

La Regla 45.1 de Procedimiento Civil, *supra*, provee un remedio para las situaciones en las cuales el demandado no cumple con el requisito de comparecer a contestar la demanda y/o a defenderse en otra forma prescrita por ley, no presentando alegación alguna contra el remedio solicitado. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 589 (2011*); Álamo v.*

*Supermercado Grande, Inc.,* 158 DPR 93, 100 (2002). Además, aplica a manera de sanción en aquellas instancias en las que alguna parte en el pleito ha incumplido con alguna orden del tribunal. *Íd.*

Se reconoce que la rebeldía constituye un mecanismo procesal discrecional para el foro de instancia. *Rivera Figueroa v. Joe's European Shop,* supra. "[L]a anotación de rebeldía o el dictar sentencia en rebeldía a una parte como sanción por su incumplimiento con una orden del tribunal siempre debe darse dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción." *Íd.,* pág. 590.

Finalmente, la Regla 45.3 de Procedimiento Civil, 32 LPRA Ap. V, dispone que "[E]l tribunal podrá dejar sin efecto una anotación de rebeldía por causa justificada, y cuando se haya dictado sentencia en rebeldía, podrá asimismo dejarla sin efecto de acuerdo con la Regla 49.2." Estos preceptos están cimentados en que los casos se ventilen en sus méritos. *Rivera Figueroa v. Joe's European Shop,* supra. Al respecto se ha establecido que esta regla se debe interpretar de manera liberal, resolviéndose cualquier duda a favor de que se dejen sin efecto la anotación o la sentencia en rebeldía. *Íd.*

**III.**

En el caso de autos, TMDC presentó el recurso de epígrafe en el que planteó tres (3) señalamientos de error, sin embargo, por estar relacionados los discutiremos en conjunto. En esencia, alega que incidió el foro primario al levantar la anotación de rebeldía a los recurridos, y concederles una prórroga para

contestar la demanda cuando el término era improrrogable.

Luego de examinar el expediente y los argumentos presentados por TMDC, a la luz de los criterios de la Regla 52.1 de Procedimiento Civil, *supra* y de la Regla 40 de nuestro Reglamento, *supra*, no identificamos razón por la cual debamos intervenir. A su vez, no encontramos un claro abuso de discreción o que el tribunal haya actuado con prejuicio o que se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esta etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. Consecuentemente, determinamos denegar el recurso de epígrafe.

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** la expedición del auto de *certiorari*.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones